Next case on our call this morning, agenda number 20, case number 107682, J.P. Morgan Chase Bank, N.A., etc., Appalachia v. Earth Foods, Inc., Kettall, Leonard S. DeFranco, Appalachia. Mr. Freidman, you may proceed. Good morning, and may it please the Court, Mr. Black. I'm Gary Feinerman on behalf of the plaintiff appellant, J.P. Morgan Chase Bank, as successor in interest to Bank One. The facts are very simple. In November of 2001, the bank loaned money to Earth Foods, and the appellee, Mr. DeFranco, and two other officers guaranteed the loan. In February of 2004, Earth Foods defaulted on the loan by failing to make a monthly payment. In April of 2004, the bank set a notice of default to Earth Foods and the three guarantors. And in June of 2004, the bank brought suit against both Earth Foods for breach of contract and against the guarantors for breach of the guarantee agreement. The circuit court granted summary judgment to the bank on the ground that the Sureties Act does not protect guarantors. The appellate court reversed, holding that the Sureties Act does protect guarantors, and remanding the case to the circuit court to determine whether to consider all other issues, including whether Mr. DeFranco could benefit from the Sureties Act. I'll address two main points this morning. The first is that the Sureties Act, by its terms, protects only sureties and not guarantors, and that Mr. DeFranco is a guarantor. Second, even if the Sureties Act does cover Mr. DeFranco, either by virtue of the fact that the Sureties Act covers guarantors or by virtue of the fact that Mr. DeFranco is a surety, his agreement with the bank expressly and repeatedly waived any protections he might otherwise have under the Sureties Act. As to the first point, what does the term surety mean in the Sureties Act? Will you get into it, Mr. Feinerman? I don't want to stop you midstream, but it appears that there is something that the appellate court addressed rather as an aside, that the contract creates a surety ship arrangement even though it uses the word guarantee. The appellate court seemed to agree with that, kind of set it aside. It's a little bit different than your argument that there are clauses. I think maybe it's going to be part of your argument that there are clauses in the contract itself. Will that be addressed as part of your argument? If not, I'd like to hear it. I was planning on addressing the fact that this instrument is a guarantee and not a surety. I don't read the appellate court's decision that way. I don't think the appellate court found that this instrument was a surety. I think it held the contrary, and its holding was that the Sureties Act covers both guarantors and sureties, and for that reason, Mr. DeFranco could benefit from the Act, or at least he's not precluded from benefiting from the Act. I think the source of the appellate court's confusion, and you may be addressing the passage that's on pages 321 to 322 of the appellate court's decision, is that the official reporter, I think the appellate court confused a surety with a guarantee of collection. And what we have here is a guarantee of payment. A surety is liable from the instant the surety ship is signed, regardless of whether there's a default. A guarantee of payment, a guarantor of payment, is liable once there's a default, and a guarantor of collection is liable not only when there's a default, but also only after, not also, but only after the creditor actually sues the principal. I thought it's important, because although it's not largely discussed, regardless of what they held, it would be another reason if we agreed it was a surety, even though they used the word guarantee to affirm on a different basis. So I thought it would be worth being addressed. Right. And that would kick us over into the waiver point, which is whether the agreement waives the protections of the Sureties Act. But I'll get to that. I'll get to that right now. I'll first note that Mr. DeFranco did not raise this argument in the circuit court, and to the contrary, in a verified pleading, admitted that he is a guarantor. So we've raised the question whether Mr. DeFranco can actually argue this point before this court. But even if you put aside the judicial admission and put aside the forfeiture, on the merits, he's a guarantor. As I mentioned, a surety is liable from the get-go. The creditor can go after the surety, even if the principal doesn't default. Whereas a guarantor is liable only once the principal defaults. The instrument itself says guarantee on page 34 of our appendix. Under additional guarantee terms, point one, the first sentence, this is a guarantee of payment and not of collection. On page 26 of the appendix, right above Mr. DeFranco's signature, it says guarantor signatures, and it says guarantee. And I acknowledge under the Vermont Marble case, the name given the instrument in the instrument is not dispositive, but it's certainly relevant throughout the time period before suit was brought in correspondence written by Mr. DeFranco that we cited to in our briefs. He referred to himself as a guarantor. But again, that's certainly relevant, not dispositive. What is dispositive is the content of the guarantee. And if I could point to paragraph 6 of the additional guarantee terms on page 34 of the appendix, the sentence reads, in the event of any default in the payment or performance of all on any part of the note, when such note becomes due, the guarantor shall, without notice or demand, promptly pay the amount thereto. The guarantor's liability here, Mr. DeFranco's liability, is contingent upon a default by the principal, or foods, under the agreement, the loan agreement with the bank. And that is what makes him a guarantor and not a surety. I mentioned earlier the first sentence of these additional guarantee terms. This is a guarantee of payment and not of collection. Those are terms of art. I mentioned a guarantee of payment is liable upon the default, a guarantee of collection, a guarantor of collection is liable only after the creditor brings suit against the principal. And these are terms of art. There was a 1999 case, Bank of America National Trust v. Shulzin, that we cited in our briefs that laid this out. It would have been clear to a guarantor or somebody in Mr. DeFranco's position in 2001 precisely what he was signing. So we believe that even if the issue is not forfeited, that this is a guarantee and not a surety. So assuming that that's the case, I'll go on to the question of whether the Sureties Act covers guarantees. And the question is, what does the term surety mean in the Sureties Act of 1874? It means what the General Assembly would have understood that term to mean in 1874. And we cited case law, treatises, dictionaries from the area, from this state and from other states, all providing that sureties are distinct from guarantors in the manner that I've discussed. The General Assembly, in statutes enacted for over a century, has made clear when it wants to cover guarantors, when it wants to cover sureties, when it wants to cover both. And that distinction should be respected. If it weren't, then in statutes where the General Assembly wrote that the statute pertains to both sureties and guarantors, the inclusion of the word guarantor would be surplusage, because if a guarantor were a surety, there would be no reason to include the word guarantor. And equally important, the distinction has been enforced by Illinois courts, both in the statutory and other contexts. We've cited a few cases, Hamilton v. Johnson in 1876. The dispositive issue was whether the plaintiff was a surety or a guarantor. And because the court found that the plaintiff was a guarantor, it entered judgment for the plaintiff. Harris v. Harris involved an 1895 statute that protected guarantors, and the court in that case, it was the appellate court, held that a surety could not take advantage of that statute. And it works the other way. In Campbell v. DeKlerk in 1907, the court held that while sureties can take advantage of the statute of limitations that the principal had, guarantors are not released by the statute of limitations. So sometimes the law favors guarantors, sometimes the law favors sureties, and that distinction has been respected. It also came into play in the Vermont Marble case, where the court noted that an offer of guarantee is not binding until the creditor sends notice of acceptance, whereas an offer of surety is binding the minute the offer is made, regardless of whether acceptance is sent by the creditor. On the statutory point, Mr. DeFranco raises a number of arguments. We address those in a reply brief. I'd like to focus on two. The first is his legislative acquiescence argument. It's based on the Cobb case from the U.S. Court of Appeals for the First Circuit back in 1912. Cobb stated in dicta that it was interpreting the Illinois Sureties Act because the instrument at issue there was from Illinois. It stated in dicta that the Sureties Act covers guarantors, but then it went on to hold that the guarantor could not take advantage of the Sureties Act because the instrument waived any protections he might otherwise have had under the Sureties Act. That case, at the outset, it was wrongly decided. It was based on the premise that there were no Illinois cases that would help solve the case. The court didn't mention the Gridley case, Harris, Hamilton, or Campbell, all of which draw distinctions between sureties and guarantees, and it held that guarantors are entitled to every equitable right of protection enjoyed by sureties. That's not true under the Campbell case, which held that sureties but not guarantors can take advantage of the statute of limitations that applies to the principle. Vermont, to the extent there was any confusion over the distinction between guarantees and sureties, in Illinois law, Vermont Marble about 20 years later reaffirmed the distinction. But the important point here in terms of the legislative acquiescence argument is that the statement in Cobb that the Sureties Act covers guarantors was dicta, and dicta cannot provide a basis for legislative acquiescence. There's no case in Illinois that we're aware of holding that legislative acquiescence can be based on a dictum from a court, and the only Illinois precedent we were able to find, the Braun case, which we cited in our reply brief, holds that dicta may not be the basis for legislative acquiescence. The second point that Mr. DeFranco makes in his brief that I'd like to address is that there's no policy reason to exclude guarantors from the protections of the Sureties Act, and our response to that is that policy is the purview of the General Assembly, not the courts. We cited a number of statutes on pages 9 and 10 of our initial brief. Sometimes the General Assembly protects guarantors, sometimes the General Assembly protects sureties, sometimes they protect both. Those choices should be respected, and that's particularly salient given that in other states, California, Arizona, have abolished the distinction between sureties and guarantors either generally or within the specific context of a surety statute. Illinois could have done that over the last 135 years, but it hasn't done so, and the General Assembly's choice here should be respected. I'll proceed to my second point, which is even assuming that Mr. DeFranco is covered by the Sureties Act, either by virtue of the fact that he's a surety or by virtue of the fact that the Sureties Act covers guarantors, he waived whatever protections he had under the Act. The protections of the Sureties Act are waivable, and in essence, what the Sureties Act does is it allows the surety to turn a surety ship into a guarantee of collection. Is there an issue as to whether your waiver argument is waived? Does that make sense? Was it brought up in either the Circuit Court or the Appellate Court or even the PLA here? It was not, and Mr. DeFranco raised the forfeiture argument, and I'll address that. The bank did not raise in the Circuit Court or the Appellate Court this contractual waiver argument. Mr. DeFranco is correct on that point, but he's incorrect that that forfeits the point for purposes of this Court, and that's because the bank prevailed in the Circuit Court and was the appellee in the Appellate Court. And so there's a precedent, which we cited, the appellee in the Appellate Court can raise any issue in this Court in order to protect the judgment, so long as that issue is apparent from the record. And here we have the guarantee agreement in the record, so that's apparent. A tougher issue is whether there's been a forfeiture by virtue of the fact that the bank did not raise the waiver issue in the Appellate Court. We've seen that in Rolandes G. recently. That's not a jurisdictional bar. The Court can consider the issue, and in this case, it's our submission that the Court should consider the issue, because the question of contractual waiver is inextricably intertwined with the question of whether Mr. DeFranco is covered by the Sureties Act in the first place. And I'll use an example, what happened in that case, the State argued in the Circuit Court, in the Appellate Court, and in its petition for leave to appeal, it was a Crawford v. Washington confrontation clause case. And the State argued that the testimony, the evidence in question was not testimonial, and therefore Crawford and the confrontation clause didn't apply. The Court granted, allowed leave to appeal, and on the merits, the State restated its argument that Crawford didn't apply, but then presented two alternatives. The first was that the State could reach those alternative arguments, forfeiture by wrongdoing and harmless error, and the Court acknowledged that there technically had been a waiver, also acknowledged that it could reach those alternative arguments, and as a reason for doing so, stated that the question of forfeiture by wrongdoing and harmless error were inextricably intertwined with the question of whether the State could reach those alternative arguments. And on point there, the argument we made in our PLA is that the Sureties Act does not apply to Mr. DeFranco, and on the merits before the Court, we said, well, even if it does apply, he waived those rights in his guarantee agreement. So we acknowledge the forfeiture argument that Mr. DeFranco has raised. It's incorrect with respect to the failure to raise waiver in the circuit court. In the appellate court, he has a better argument with respect to the failure to raise it in the petition for leave to appeal, but we would ask the Court, for the same reasons as in Rolandus G., to consider our waiver argument, contractual waiver argument here, should it become necessary to do so to reach that issue. What the Sureties Act does is it allows the surety to transform into a contractual waiver agreement, and it does not apply to Mr. DeFranco. It's your position that they have waived the protections of the Act based on the contract language in the additional guarantee terms, is that right? That's correct. I mean, I haven't had a chance to fully review this, but I'm glancing at it. I just couldn't find it. Is it in there? Is reference to the Illinois statute, you say, that's waived based on that language? No, there is not express reference to the Illinois statute, but there are many on page, well, I'll stick with page 834. The answer to your question is there is no express reference to the Illinois statute, but that doesn't matter because these additional guarantee terms do waive the protections of the Illinois Sureties Act using different language, and it's very clear. In paragraph 4, Mr. DeFranco waives any right to require Bank One to make any presentment, protest, demand in connection with the note. That's exactly, he waived exactly what the Sureties Act would otherwise have allowed him to do. Also in paragraph 4, Mr. DeFranco waived any right to require Bank One to make any presentment, protest, demand in connection with the note. He requires Bank One to first proceed directly against or at once against any person, including the company, which is Earth Foods. Again, waiving exactly, exactly what the Sureties Act would have otherwise allowed him to do, which is write to the bank and say, hey, you have to proceed first against Earth Foods before you come after me, and unless you do that, my obligation is discharged. Paragraph 5, perhaps most important, Mr. DeFranco waived, quote, all other rights and defenses of a guarantor or surety. All the rights or defenses of a guarantor or surety. That certainly conveys the Sureties Act. And then it goes on to say, including without limitation, those rights and defenses set forth in the Arizona Sureties Statute. And as we noted in our brief, the Arizona Sureties Statute is materially identical to the Illinois Sureties Statute, except for one thing. The Arizona Sureties Statute applies to guarantors. And of course, we're assuming, since we're on the contractual waiver point, that the Illinois Sureties Act applies to guarantors, or at least to Mr. DeFranco. So all those things, including the express reference to a materially identical Arizona Statute, we submit means that there has been a contractual waiver. And what about since paragraph 5 references Arizona, Oklahoma, and Colorado, but doesn't mention Illinois, is there an argument then on their side that since the agreement specifically refers to certain statutes with no reference to Illinois, does that mean you left Illinois out? No, because it says the waiver pertained to all other rights or defenses of a guarantor or surety, including without limitation. So it was just by way of example mentioning those four statutes, and it wasn't meant to be exclusive. And I know your time's running out, I just want to ask you one other question. There's an argument in their briefs that these documents are not complete, that they're not the original documents. What about that? Yeah, there was no, the bank couldn't find the original, and I'll just give a little bit of history. At page 36 of the record, Mr. DeFranco filed a bill of particulars, because the loan agreement attached to the complaint was illegal. And also in that bill of particulars, Mr. DeFranco noted that the exhibit to the complaint, page 1, which is 826 of the appendix, refers to additional guarantee terms set forth on the reverse, and Mr. DeFranco noted correctly that the additional guarantee terms were not attached. Chief Justice Fitzgerald, may I complete my answer? Go ahead. On page 134 of the record, the bank filed another copy, this time more legible, another copy of the loan agreement, and this time that included the additional guarantee terms. On page 512 of the record, the bank submitted an affidavit of lost note and guarantee, which was an officer of the bank averring that the original had been lost, but that the bank did have a copy. And there's no doubt that the signatures on page 826 were Mr. DeFranco's, and that's what the record tells us about. If the terms of the record are not complete or unknown in this record, and if we were to agree with Mr. DeFranco that the shorting stag applies, should the case be remanded for further findings? Is there anything out there that is discoverable in terms of the complete contract? No, I believe that issue has been covered by the affidavit that the bank submitted, which is that the original could not be found, but here was the copy. And the copy cuts off on the additional guarantee terms, it cuts off some text at the bottom. If you look at that, this text is basically the integration clause in the contract. Mr. DeFranco has not alleged at any point that whatever it is that's missing has anything to do with the contractual waiver or with the terms of the guarantee. Thank you. Robert G. Black. Good morning, Your Honors. May it please the Court. Gary. My name is Robert G. Black. I represent Mr. DeFranco in this matter. Essentially, we're here before Your Honors following a ruling on summary judgment by the Circuit Court, where the Circuit Court took loan documents that use the word guarantee and took a statutory provision that uses the word surety and said, I'm going to enter summary judgment because the surety act does not apply. The appellate court looked at this case, and in terms of statutory interpretation, discussed the decades of law concerning surety versus guarantee, discussed how the terms have been intermixed for years, discussed how essentially the matter has boiled down to a surety being the broader term and a guarantee being the more specific term, that a guarantee is, in fact, subsumed within the surety, that there is no practical reason to continue any differentiation there. And it did also comment that in terms of the documents here, the loan documents that the bank is relying upon, if the bank continues to want this bright line demarcation between surety and guarantee, then their own documents either eviscerate any such distinction or show that Mr. DeFranco was a surety. Okay? Our posture here before this Court has changed somewhat in that the bank has raised for the first time in briefing before this Court, and not in the PLA, that the essential determination here of legislative intent must be what the legislature meant and intended in 1874 when they passed this statute. And then their corollary position that we can unequivocally determine what that is by a few cases that are out there, including the Gridley case, which talks about a guarantor is not a surety or vice versa, I'm not recalling which, in dicta, which was not relevant to the Supreme Court deciding that case in 1874, and based upon other commentary during that time, that we can definitively discern what that legislative intent was back then, and that that legislative intent trumps everything else, including 135 years of case law, decisional law, commentary, restatement, including the fact that obviously our commercial system, our banking system is dramatically different at the beginning of the 21st century than it ever was in 1874. So there are problems with this position that we have identified. First and foremost, that it ignores all of this case law that says basically the only distinction here is one of academic purposes, that essentially the surety and the guarantee both do one important thing, and that is it guarantees the performance and the payment of debt of a third party. The only real practical distinction is how that contractual relationship arises. For what was traditionally deemed as a surety, it arose in the first instance at the same time of contracting. For what was traditionally deemed as a guarantee, it arose secondarily to the contracting, and arose because the guarantee would then guarantee the payment and performance at that point. Your argument is that these terms are synonymous? My argument is the same that the appellate court accepted and the same that we've advanced, that any practical distinctions between the two have long since gone by the wayside, that in fact the surety is the broader term, and the guarantee is subsumed within the term surety. Yes. What the bank's argument also ignores is how can we definitively discern exactly what the legislative intent was in 1874, and again, how does that trump everything that's been in existence since then, but also, and perhaps most critically, is that it doesn't take into proper account their own loan documents. Their own loan documents contain specific language that as the appellate court commented, either eviscerate the distinction that they want for purposes of the statute, or declare Mr. DeFranco a surety, or at a minimum, raise issues here that were not worthy of decision by summary judgment. There is, on that point, there has been a contention in the bank's reply brief that we have somehow abandoned our position in what the appellate court said in terms of how this matter arises in the statutory interpretation. We are fully on board with how the appellate court viewed this as a matter of statutory interpretation, and the fact that there is no practical distinction anymore between the two. But if we are to look at the documents themselves, and how those documents are phrased, and to look at the documents within the business credit application and agreement, and that's at page, begins at page 824 of their appendix. On the second, or it's the third page, actually, which contains what purports to be Mr. DeFranco's signature, significantly it does state, and I'm trying to read it because the font is rather small, but it basically states that the confirmed loan terms, along with the signing of the business credit application agreement, shall be collectively considered the note in security agreement. Significantly in this portion of the loan documents, it doesn't mention additional guaranteed terms. Within, or right above there, and underneath Mr. DeFranco's purported signature, it states that each guarantor jointly, severally, and in solito and unconditionally guarantees payment at any time. If the bank wants to still rely upon these distinctions between surety and guarantee, I think we can kind of develop a checklist of what was involved with surety vis-a-vis guarantee. And specifically for a surety, a surety becomes jointly and severally liable, contracts at the same time as the primary obligor or debtor, is answerable in the first instance, and is liable without notice. What we have here immediately shows how this is a surety setting or evinces a surety setting in that the contracting was at the same time by all the parties, and in that we have this language here right up front that says jointly, severally, and in solito. That is, strictly speaking, what has been traditionally deemed surety language. If we're going to continue to make that distinction. Yes, Your Honor. We don't believe that that's a judicial admission for several reasons, Your Honor. Number one would be, as the cases have recognized, the terms have been intermixed and intermixed often. They were utilized in this case not in terms of making a distinction between a guarantor and a surety, but to follow the documentation and the language that was contained within the documents here. But beyond that, we still have contractual language here that says you're going to be jointly conditionally liable, you've contracted at the same time, all the traditional indicia of a surety. Within that section also, it also talks about how the obligations of each guarantor are independent, and each agrees the bank may proceed against one or more without proceeding against the company or other out the door. Once again, we are looking at what is traditionally surety language. Paragraph 19 within the confirmed loan terms then states the bank may take action without the consent of or notice to anyone. If we go back to our little checklist, and there is actually going to be a distinction between a surety and a guarantee, once again, we're checking off surety, because a surety is someone where there can be a proceeding without notice. Now, let's then come to this additional guarantee terms that Gary and the bank has raised. And we've raised several concerns with the additional guarantee terms and how the record may not be fully fleshed out as to these additional guarantee terms. Number one, the additional guarantee terms were not attached as an exhibit to the complaint. There was the demand for a bill of particulars, and what was received at that point was incomplete. We don't know what, if anything, may still be said within the remainder of that additional guarantee terms, because it cuts off at the bottom of the page. We can't allege, we can't assert what else might be within that, because we just simply don't know. But more pointedly here, the bank's own documents say that the entire loan agreement consists of the confirmed loan terms and the business credit application and agreement, and is completely silent as to anything else called additional guarantee terms. Also, no separate signatures on there, but even more pointedly, when the bank came back to try and say that it had completed complied with providing the documents here, it didn't attest to the accuracy of everything, or that this was complete, or it didn't attest that this was a part of it. What they said was, we lost the original. So the problem here then becomes, when we've got this waiver language that's subsumed within the additional guarantee terms, what is our record like in terms of reliance upon the additional guarantee terms as it exists today? We've got documents that say the loan agreement is A and B, and not C, but in the records A, B, and C, and C is incomplete. Beyond that, if we're looking to the terms of the additional guarantee, and if we're able to do so, we can see that, yes, there is, as the bank has pointed out, a section says this is a guarantee of payment, not of collection. But it also then reiterates, once again, guarantor shall be liable jointly, severally, and in solito with the company and all other guarantors of all or any part of the note, and the release of one does not affect the liability of the other. If we're still going down that surety checklist, once again we're checking surety. It does state within paragraph six that in the event of any default in the payment or performance, the guarantor shall, quote, without notice or demand, promptly pay the amount to Bank One. If we're going back to that checklist, we see again, without notice, indicia of what has traditionally been known as a surety, or at the very least, this raises a mixed bag here, but still evinces a surety setting, if we're going to continue to make that distinction that the bank wants under the statute. The waiver language itself basically asserts, and what I suppose is confusing to me, is it says you're giving up all defenses that belong to guarantee or surety, but we're calling you a guarantor anyway. It then goes on to state, within subparagraph D of paragraph five, that any defenses given to the guarantor at law or in equity, other than actual payment of the note, are being waived. Several points here, Your Honors, and as Your Honors have identified, is that this particular issue of this contractual language was not raised in the trial court, was not raised to or addressed by the appellate court, but most significantly was not included in their petition for leave to appeal. The fact of the matter is, there is clear case law out of this court, and the case law is legion, that if you don't raise the issue in the petition for leave to appeal, you can't raise it for the first time before this court. This is when they are raising this argument for the first time, is in the briefing before this court, and not in the petition for leave to appeal. But going beyond that, that waiver language itself, we do have to note the plethora of terms and words and documents that the bank has provided, and that anything that the bank has provided here should and will be, well, should be, I won't be presumptive, should be construed against the bank itself. And we have the case law that says that if it's going to be a valid contractual waiver, it's got to be knowing, voluntary, and intentional. And we submit that this little portion, within a page of the additional guarantee terms that are incomplete of record and may perhaps not have been part of anything, we don't know for certain, does not constitute, and within the font that we're dealing with here, does not constitute a knowing, complete, voluntary, intentional waiver. The bank has cited the City National Bank v. Ryman case that, you know, the statute, section one of the statute can be waived. What we have asserted, or want to assert in response there, is that the language in that case was far different and far more specific than what we have here. The language in that case talks about, or specifically mentions, waiver of diligence in collection. Section one of the Surety Act basically says, using the term surety, if you are aware that the primary obligor is going to leave the state, become insolvent, those types of things, you can give notice of that to the bank. The bank then should proceed with due diligence, once the cause of action accrues, to collect that. Okay? This language from the City National Bank v. Ryman specifically mentions an express waiver of diligence in collection. I don't read all the additional guarantee terms here, particularly this one that broadly states you waive any and all defenses that are available at law or in equity, or are available to you, you can give notice of that, but I don't read all the additional guarantees as a specific waiver of this, assuming that this issue can now be considered. Mr. Black? Yes, Your Honor. Let's go back to the section one, the plain language of the statute. Yes, Your Honor. Their argument is that it refers to sureties expressly, there's no reference to guarantor. Correct. He cites Gridley, you respond to it in yours, and you make a statement, which I'm not sure I understand in your brief on page 33, where you say there's no statement in any of the cases the bank cites as being, quote, current with the enactment of the Surety Act. They indicate that any differences between the two terms will also equate with an intended difference in a statutory defense to an obligation to pay the debt of another. So what do you mean when you say current? I think what we were trying to differentiate or point out there, Your Honor, is the statute certainly was not a statute that was enacted in 1874, and obviously we don't have the benefit of legislative history or anything from back then. The Gridley case was decided, yes, in 1874. Was it decided after the statute was enacted that year or not? We don't know. But then what we have then is a series of cases after that, culminating in a 1907 Illinois Appellate Court decision, which, as Your Honors know, is not a statutory case. And in Gridley, the distinction, we believe, did not have to be made under those circumstances, and certainly was not made in reference to any sort of statutory right or defense. Gridley had at issue a guarantee situation, and the court went on to say basically a guarantee is not a surety or vice versa. And again, I'm sorry for my lack of recollection of which is which there. But it is what we assert to be indicta in that case, and was not germane to that court's decision. But the Gridley court does, so you are saying the Gridley court does make a distinction. You just don't think it's central to the case. The Gridley court just says a blanket statement without justification, rationale, or anything behind it, and without citation, if I'm right, is not a guarantee, or a guarantee is not a surety. That's essentially what that case says. Going back to the whole legislative interpretation here, what we have also asserted, and what the appellate court did touch upon and agree with, is that what we have here is essentially a provision that says if you are contractually responsible for the debt of another, if you are contractually responsible for the debt of another, and you know that that party is going to become insolvent, or is going to become, or move out of the state, I think is the language, you can give notice of that to the bank. And I think the statute also talks about the timing of it being from the accrual of the cause of action, and that's the point that the appellate court remanded for. And if the person does that, then that person can be discharged from the obligation. In terms of how that statute comes about, I've heard bandied about surety versus guarantee, guarantee of collection versus guarantee of payment. But what is, I guess, significant to me is that this statute itself talks about accrual of the cause of action, and does there need to be an accrual of cause of action if it was back in 1874 strictly speaking of surety, if we were to maintain those distinctions. But the better answer there is that when we have this contractual relationship, for the payment of another party's debt or performance of another party's obligation, one arises primarily, one arises secondarily. If you're giving, if you're providing a party with the incentive to give, if you're providing a party with the incentive to give notice of something, and the, if the other party must act with due diligence in collection, that there exists no reason to differentiate rights and responsibilities based upon surety versus guarantee. I see the red light is on. If there are any other questions, Your Honors, otherwise, I thank you for your attention and for the opportunity to appear in front of you and address this case on behalf of my client. Thank you, Your Honors. I'd like to first address the question of Mr. DeFranco's signature. It's on page 26 of the appendix. His signature appears in two places. The first point is as an officer of Earth Foods, and he's signing the loan on behalf of Earth Foods, and he's signing the loan on behalf of Earth Foods, along with Mr. Jarvis, the President. The second signature, which is right here, is he's signing as a guarantor, and in the record at pages 619 and 631, Mr. DeFranco admitted in his deposition that these were his signatures. With respect to the additional guarantee terms and whether they are part of this note, there is no guarantee that Mr. DeFranco signed. The guarantee part of this page on 826 of the appendix references each guarantor also agrees to some matters, and the additional guarantee terms set forth on the reverse, which are incorporated herein by reference. And when the original complaint was submitted, Mr. DeFranco's signature was not included in the exhibit to the complaint, and for that reason the bank submitted a more legible version of the loan document, also one that included the additional guarantee terms. So we have Mr. DeFranco's signature as a guarantor that references the additional guarantee terms, which has all the waiver language that I addressed when I was here for my initial presentation. And then finally, as far as the Sureties Act cover guarantees, we do, this course precedents say very clearly that the appropriate inquiry is contemporary meaning to the General Assembly that enacted the statute. We don't have legislative history from back then, so really all we have are cases and dictionaries and treatises, and none of those, we cited those cases, and there were four out-of-state cases that we cited for prior to, that were decided prior to 1874. Those cases really aren't matters of precedent, but it's reflective of contemporary meaning and contemporary understanding. Both before 1874, in 1874, and after 1874, everything that's been cited to this court indicates that it was commonly understood back then, that there's a distinction between guarantee terms and the guarantees, guarantors, and sureties. And that's the understanding that ought to be imputed to the General Assembly when it enacted the statute in 1874. It would be odd to suggest that contrary to the understanding of dictionaries and treatises and courts of that time, the General Assembly went on its own way, on its own path, without saying anything, and said, oh, you know, what we're doing is when we use the word surety, we also mean to include guarantee. That just doesn't fit with the historical evidence that we have before us. Mr. Black is right. There has been a lot of loose use of the terms over the years. Bailey, one of the treatise writers, Bailey, back in the 1800s complained about it. But the point is that Bailey and the American Law Institute, in the restatement third that we cite, all make the point that when the distinction is important between a surety and a guarantee, it ought to be and is respected. The Hamilton case, the DeClercq case, the Harris case that we cite, all turn on the distinction between a surety and a guarantor. And what that shows is that, yes, people may use the terms loosely. Courts may use the terms loosely. The restatement of security, which Mr. Black cited in his brief, used the term loosely. But the courts and the American Law Institute always come back to the point that, yeah, yes, yes, sometimes these terms are used loosely, but there is a distinction and it ought to be respected. It's been respected by the General Assembly. It's been respected by Illinois courts and ought to be respected here. With respect to the A34 of the appendix that is cut off at the bottom, as I mentioned, this is an integration, it's part of the agreement that's an integration clause. There's been no allegation that it has anything to do with the terms of the guarantee itself or about the contractual waiver of rights under the guarantee. Mr. DeFranco has not provided a copy. I don't know whether he kept one or not. If he did and didn't provide it, that should fall on him. And if he never got a copy in the first place when he signed the guarantee, that should fall on him as well. With respect to whether the loan document makes Mr. DeFranco a surety rather than a guarantor, the key distinction between a guarantee and a surety is the surety makes the surety liable, the surety agreement makes the surety liable at all points, even prior to default, and the guarantor is liable only after the principal defaults. And that's plainly in section, in paragraph 6 of the additional guarantee terms. Paragraph 1 says that this is a guarantee of payment and not collection. It references joint, several, and solido liability, but that liability arises only after the default. The bank didn't go after any of the guarantors prior to the time that Earth Foods defaulted, thus recognizing what this instrument actually is, which is a guarantee. And there was no notice. Again, the notice provisions of this guarantee come into effect only after there's a default, and that's really what distinguishes guarantees from sureties. In terms of the agreement being construed against the bank, the agreement's very clear. So even if that doctrine did apply, it wouldn't matter. But it also bears mention that we're dealing with a very sophisticated guarantor here. Mr. DeFranco's an attorney. He teaches CLE classes. On page C634 of the record, he admitted in his deposition that he signed the document without reading it. That's a choice that Mr. DeFranco may wish that he hadn't made, but he did make the choice. We have this agreement here. It's very clear on its terms, and the agreement ought to be enforced. So we would ask that the court reverse the judgment of the appellate court from the judgment of the circuit court. Thank you. Case number 107682 will be taken up at the next hearing.